# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

WSOU INVESTMENTS, LLC, d/b/a
BRAZOS LICENSING AND
DEVELOPMENT,

                Plaintiff,

    v.

TP-LINK TECHNOLOGY CO., LTD.,

                Defendant.

Civil Action No. 6:20-cv-1019-ADA
Civil Action No. 6:20-cv-1020-ADA
Civil Action No. 6:20-cv-1021-ADA

**JURY TRIAL DEMANDED**

## TP-LINK CHINA'S REPLY CLAIM CONSTRUCTION BRIEF[1]

---

[1]    Defendant's participation in this litigation is not a waiver of its personal jurisdictional challenge and special appearance to contest jurisdiction.  Defendant reserves the right to appeal the Court's Order denying TP-Link's motion.  *See In re: OnePlus Technology (Shenzhen) Co.*, No. 21 Civ. 165, 2021 WL 4130643, *4, n.2 (Fed. Cir. Sept. 10, 2021) (non-precedential) (per curiam) (noting "order denying mandamus does not foreclose OnePlus from raising its arguments on appeal from a final judgment against it").

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  U.S. PATENT NO. 7,333,770 (CASE NO. 6:20-CV-01019) CLAIM
    TERMS .................................................................................................................1

    A.  "broadcast"/"broadcasting" (claims 1–5, 7, 11–14, and 16–18)...........................1

    B.  "as a function of objective or subjective criteria" (claims 1, 2,
        11, and 18) ..........................................................................................................2

    C.  "filter mechanism" (claims 1, 7, 11, 13, and 16) ...................................................3

    D.  "retransmission mechanism" (claims 3, 7, and 15–16)...........................................5

    E.  "synthesizing mechanism" (claims 2, 7, 10, and 18)..............................................6

II. U.S. PATENT NO. 8,774,790 (CASE NO. 6:20-CV-01020) CLAIM
    TERMS .................................................................................................................6

    A.  "said reconfiguration solution *adapted to* reconfigure the base
        station element to serve a portion of the plurality of wireless
        terminals, wherein the reconfiguration solution depends on a
        type of the failure condition" (claims 1, 14, 19, 20) ..............................................6

        1.  WSOU agrees that this limitation is subject to means-
            plus-function treatment, but is wrong that the patent
            discloses a sufficient algorithm................................................................6

        2.  If the Court finds that the specification discloses an
            algorithm, then the structure should be limited to Fig. 8 ..........................9

III. U.S. PATENT NO. 9,548,977 (CASE NO. 6:20-CV-01021) CLAIM
    TERMS .................................................................................................................9

    A.  "a vendor specific attribute according to the standard of Wi-Fi
        Alliance" (claims 1, 5, 10, 11, 13, and 15) ............................................................9

    B.  "one processor; and at least one memory including computer
        program code, the at least one memory and the computer
        program code configured to, with the at least one processor,
        cause the apparatus to perform at least the following:" (claims
        5, 11, and 13) ....................................................................................................13

i

## <u>TABLE OF CONTENTS (cont'd)</u>

<u>**Page**</u>

C.    "A non-transitory computer-readable storage medium including computer-readable program code, which when executed by at least one processor provides operations comprising:" (claim 10) .......................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arendi S.A.R.L. v. LG Elecs., Inc.*,
   No. 12-cv-1595-LPS, 2019 WL 3891150 (D. Del. Aug. 19, 2019)........................................15

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
   334 F.3d 1294 (Fed. Cir. 2003)...............................................................................................11

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002).................................................................................................14

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   659 F.3d 1057 (Fed. Cir. 2011)...............................................................................................14

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
   382 F. Supp. 3d 586 (E.D. Tex. 2019).....................................................................................15

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005).................................................................................................3

*Dyfan, LLC v. Target Corp.*,
   No. 6:19-cv-00179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020) ...........................14

*Egenera, Inc. v. Cisco Sys., Inc.*,
   972 F.3d 1367 (Fed. Cir. 2020)............................................................................................4, 14

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366 (Fed. Cir. 2006)...............................................................................................13

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012)...................................................................................................5

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
   91 F.3d 1580 (Fed. Cir. 1996)...................................................................................................4

*Noah Sys., Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)............................................................................................8, 14

*Parkervision, Inc. v Intel Corp.*,
   Case 6:20-cv-00562-ADA, Dkt. 61 (July 22, 2021)..................................................................4

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
   987 F.3d 1358 (Fed. Cir. 2021)..................................................................................................4

iii

## TABLE OF AUTHORITIES (cont'd)

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
  809 F. App'x 863 (Fed. Cir. 2020) ........................................................................7, 8

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)...............................................................................4

*WSOU Investments LLC v. Google LLC*,
  No. 6:20-cv-00573-ADA, Dkt. 44 (W.D. Tex. June 2, 2021) (Albright, J.) ..........................14

**Statutes**

35 U.S.C. § 112, ¶ 6 ........................................................................................... *passim*

**Other Authorities**

MPEP § 2173.05(e)..............................................................................................10

## I.      U.S. PATENT NO. 7,333,770 (CASE NO. 6:20-CV-01019) CLAIM TERMS

### A.      "broadcast"/"broadcasting" (claims 1–5, 7, 11–14, and 16–18)

| WSOU | Defendant |
|------|-----------|
| No construction necessary | Transmitting information to multiple receiver terminals using push techniques |

"Broadcast"/"broadcasting" requires construction to capture clarifications the Applicant provided about the term in the intrinsic evidence, and in particular the prosecution history. WSOU's Opposition is completely silent on the Applicant's statements during prosecution that are highlighted in Defendant's opening brief.  (*See* WSOU Resp. at 3–5).

WSOU starts with a strawman argument, raising a "problem" with the proposed construction that does not exist by complaining that the proposed construction "requires the broadcast message to be *actually received* by multiple devices."  (WSOU Resp. at 2).  That is wrong.  Defendant's proposed construction does not include any requirements about "actually receiv[ing]" the broadcast message.  Instead, the proposed construction for "broadcast" is plainly about "transmitting," *not* receiving.  Whether the broadcast message is "actually received" is simply not part of the "broadcast"/"broadcasting" claim dispute and not an issue raised by Defendant's proposed construction.  As to "transmitting"—the actual language used in the proposed construction—WSOU does not dispute that broadcasting pertains to transmitting. WSOU agrees that broadcasting is about how "information is *sent*."  (WSOU Resp. at 2).

WSOU next argues that Defendant's proposal improperly adds a requirement of "multiple receiving terminals."  (WSOU Resp. at 2–3).  But, as WSOU concedes, "receiver terminals" are already part of the claims—Defendant is not adding a requirement.  (*See, e.g*., '770 patent at claim 1).  This aspect of Defendant's proposal merely clarifies that there are multiple such receiver terminals involved in the "broadcast"/"broadcasting."  This is well supported.  By the plain language of the claim, "receiver terminals," is recited in plural form,

indicating that there are multiple terminals.  Further, WSOU completely neglects the relevant '770 prosecution history.  (*See* Defendant Op. at 3–5).  To overcome the Examiner's rejection on the grounds of novelty, the Applicant argued that the Minborg prior art reference was different from the alleged invention because Minborg "***does not disclose anything more than a two-party conversation***."  (Ex. 1; '770 file history, 1/3/07 Response to Office Action at 9 (emphasis added)).  Thus, by the Applicant's own admission, the claim requires multiple receiving terminals rather than one receiving terminal.  Otherwise, the claim would encompass the "two-party conversation" distinguished by the Applicant, with the broadcast device being one party and a receiving terminal being the other party.  The Applicant's arguments that were used to distinguish the prior art and obtain the patent should govern here.

Finally, WSOU argues that it is confusing what "push techniques" means.  (WSOU Resp. at 3).  But "push techniques" is patentee's own language.  (*See* '770 patent at 1:44–45).  And critically, during prosecution the Applicant argued "push" vs. "pull" technology is key to distinguishing the invention from the prior art.  (*See* Defendant's Op. at 4–5 (citing Ex. 1; '770 file history, 1/3/07 Response to Office Action at 9, 13, 17; '770 file history, 3/8/07 Pre-Appeal Brief Request for Review at 2)).  Neither the Applicant nor the Examiner found the idea of push techniques confusing during prosecution.  WSOU cannot now run away from what the Applicant relied on to distinguish the claimed invention.  Defendant's proposed construction properly captures the meaning of the term as a POSITA would understand from the intrinsic evidence.

**B.     "as a function of objective or subjective criteria" (claims 1, 2, 11, and 18)**

| WSOU | Defendant |
|---|---|
| No construction needed | Indefinite |

The problem with the term is not just that it is broad, although that is one issue that WSOU highlighted.  (WSOU Resp. at 3–4).  The critical problem, which WSOU does not address, is that the term has no definite meaning such that a POSITA can determine its scope.

Tellingly, WSOU makes no attempt to describe anything about the meaning of "objective or subjective criteria," beyond setting forth a few examples that are identified in the patent.  But WSOU does not contend that objective or subjective criteria are limited to those examples.  The public has no notice—it is left to wonder—whether other criteria outside of those limited examples would fall within the scope of objective or subjective criteria, or some other type of criteria altogether.  For example, claim 16 recites "criteria" without the "objective or subjective" prefix, indicating that there are criteria other than "objective or subjective" criteria.

WSOU complains that Defendant's Opening brief allegedly equates "subjective" to "opinion."  But that misses the relevant point.  The fatal issue with the term is that criteria that one POSITA may regard as within the scope of "objective or subjective criteria" may be regarded differently by another POSITA—whether that is called "opinion" or something else is irrelevant.  Thus, the claim "fails to provide any direction to one skilled in the art attempting to determine the scope of the claimed invention," and should be found indefinite.  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352 (Fed. Cir. 2005).

C.    **"filter mechanism" (claims 1, 7, 11, 13, and 16)**

| WSOU | Defendant |
|---|---|
| No construction needed | 35 U.S.C. 112, ¶ 6 applies<br>Functions: filtering broadcast information items that controls a switch to filter said information items (claim 1); receiving managed profile information from the circuit and broadcasting information and routing information associated with the input information streams (claims 7 and 16)<br><br>Structure: Insufficient structure (no algorithm); indefinite |

WSOU's opposition to "filter mechanism" primarily relies on old and restrictive means-plus-function law (WSOU Resp. at 4–5), and is silent on the Federal Circuit's more recent precedent in *Williamson* that clarifies ["g]eneric terms such as ***"mechanism"*** . . . is tantamount to using the word 'means' because they '***typically do not connote sufficiently definite structure***'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (emphasis added); *see also Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020).  The mere use of the prefix "filter," which WSOU relies on, does not impart sufficient structure to "mechanism."  Indeed, WSOU acknowledges that "filter mechanism" is an abstract black box in Fig. 1.  (WSOU Resp. at 6).  Here, "['filter mechanism'] does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used."  *Williamson*, 792 F.3d at 1350.

WSOU points to *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) and *Parkervision, Inc. v Intel Corp.*, Case 6:20-cv-00562-ADA, Dkt. 61 (July 22, 2021) for their passing discussions involving the word "filter."  (WSOU Resp. at 5).  But WSOU fails to explain how any analysis from those cases applies.  *Greenberg*, for example, apparently references a physical filter (listing it with other physical structures such brake, clamp, screwdriver, lock), unlike the non-physical "filter mechanism" at issue here. "Filter" here is purely functional, as there is no disclosure that informs its structural character, and there is no evidence that it has any clear or generally understood meaning in the context of the patent.

Further, the "filter mechanism" at issue is configured for the functions recited in the claims.  Claim 7, e.g., recites "a filter mechanism *configured to receive said managed profile information from said circuit and broadcasting information and routing information associated with said input information streams*."  Even if "filter" was structure in some general sense, there is no indication of how that purported structure is sufficient for performing the recited function.  *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1367 (Fed. Cir. 2021)).

Finally, WSOU relies on the following as an alleged "algorithm": "The filter mechanism 6 therefore receives as input the criteria of the profile from the node profile management circuit 8 and the information associated with a given information item enabling it to be characterized." ('770 patent at 4:44–48).  This description is not an algorithm. It simply describes the inputs to the filter mechanism, as is clear from the language "[t]he filter mechanism 6 therefore receives as input …."  Describing "inputs to and outputs from," without "any algorithm for how" to perform the recited function is insufficient.  *Augme*, 755 F.3d at 1337–38.

### D.    "retransmission mechanism" (claims 3, 7, and 15–16)

| WSOU | Defendant |
|---|---|
| No construction needed | 35 U.S.C. Section 112, ¶ 6 applies<br>Function: retransmitting the stored information items to the downstream node as a function of commands associated with said input information streams<br><br>Structure: Insufficient structure (no algorithm); indefinite |

Like "filter mechanism," WSOU's opposition to "retransmission mechanism" relies on outdated law.  WSOU also resorts to rewriting the claims, arguing that "the claims recite a definite structure: a transmitter," when in fact the claims make no mention of a "transmitter."

WSOU asserts without any support that a "POSITA knows that a retransmission mechanism is a transmitter."  (WSOU Resp. at 6).  But "transmitter" does not appear in the patent.  "There is no instruction for using a particular piece of hardware, employing a specific source code, or following a particular algorithm. There is therefore nothing in the specification to help cabin the scope of the functional language in the [retransmission mechanism] element: The patentee has in effect claimed everything that [performs retransmissions] under the sun."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012).  WSOU does not dispute that the "retransmission mechanism" is merely depicted as an abstract black box (*see* '770 patent at Fig. 1), and points to nothing that describes how the "retransmission mechanism" operates.

E.      "synthesizing mechanism" (claims 2, 7, 10, and 18)

| WSOU | Defendant |
|------|-----------|
| No construction necessary | Section 112, ¶ 6 applies<br><u>Function:</u> synthesizing the profile information and supply the synthesized information to a circuit configured to manage the profile information<br><br><u>Structure:</u> Insufficient structure (no algorithm); indefinite |

"Synthesizing mechanism" is subject to means-plus-function treatment because there is not sufficient disclosure of structure for the functions. WSOU relies on the argument that "[a] POSITA knows that a synthesizing mechanism is a synthesizer." But even if that were correct, *what* is a "synthesizer" is unexplained (and there is no evidence that it has any clear meaning), let alone *how* such a "synthesizer" performs the recited function of "synthesizing the profile information and supply the synthesized information to a circuit configured to manage the profile information." WSOU does not dispute that "synthesizer mechanism" is depicted as an abstract black box in Fig. 1, and that there no algorithms are disclosed for it.

II.     U.S. PATENT NO. 8,774,790 (CASE NO. 6:20-CV-01020) CLAIM TERMS

A.      "said reconfiguration solution *adapted to* reconfigure the base station element to serve a portion of the plurality of wireless terminals, wherein the reconfiguration solution depends on a type of the failure condition" (claims 1, 14, 19, 20)

| WSOU | Defendant |
|------|-----------|
| No construction necessary | 35 U.S.C. § 112, ¶ 6 applies<br><u>Function:</u> reconfiguring the base station element to serve a portion of the plurality of wireless terminals, wherein the reconfiguration solution depends on a type of the failure condition<br><br><u>Structure:</u> Insufficient structure (no algorithm); indefinite |

1.      **WSOU agrees that this limitation is subject to means-plus-function treatment, but is wrong that the patent discloses a sufficient algorithm**

WSOU agrees that "reconfiguration solution" is subject to means-plus-function treatment

(WSOU Resp. at 8). The parties, however, disagree whether the specification discloses a sufficient algorithm that provides the necessary structure for performing the claimed function. WSOU points to a purported "algorithm" in Fig. 8, and the accompanying disclosure in the specification.  (*See* WSOU Resp. at 9–10).  But WSOU's argument fails because Fig. 8 merely recites the desired result recited in the claims of an unspecified algorithm (*e.g.*, "determine a power level increase" 810, and "determine signaling required for instructing" a base station to monitor the wireless terminals to "determine a direction of travel associated" 812, 814).  This is insufficient.  *See Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 809 F. App'x 863, 865–66 (Fed. Cir. 2020) (finding that "the specification merely restates the claimed function" and "[m]erely describing the results of an unspecified algorithm in this manner . . . is not sufficient to satisfy the requirements of § 112 ¶ 6," renders the claims indefinite), *aff'g* No. 2:18-cv-0042-JRG-RSP, 2019 WL 11023944, at *11–13 (E.D. Tex. Apr. 18, 2019).

Fig. 8 states, "identify base station element with failure condition 804" and "identify at least one base station element to be reconfigured based on base station element with failure condition 806."  This simply mimics the claim language, *e.g*., claim 1 recites: "at a base station element, in response to an indication of a failure condition associated with another base station element serving a plurality of wireless terminals, performing a self-reconfiguration according to a reconfiguration solution."  Fig. 8 further states that a reconfiguration solution is to "determine a power level increase associated with each of the at least one base station element to be reconfigured 810."  But this simply restates a desired result recited in the claims, *see, e.g.*, claim 4: "The method of claim 1, wherein the reconfiguration solution includes increasing a power level employed by the base station element to thereby expand a wireless coverage area of the base station element."  Fig. 8 also states that a reconfiguration solution is to "determine signaling required for instructing the at least one base station element to be reconfigured to monitor for each of the wireless terminals 812" and to "determine a direction of travel associated with each

wireless terminal previously served by the base station element with the failure condition 814."

But again, this just restates the desired result recited in the claims, *see, e.g.*, claim 5.  Moreover,

"the failure to disclose an algorithm is not excused merely because a person of ordinary skill

purportedly "would be able to devise a means to perform the claimed function."  *Id.* at 865.

WSOU's arguments fail for another reason—it ignores the claim language that the

"reconfiguration solution" is a function that "depends on the *type* of failure condition."  (*See*

WSOU Resp. at 9–10).  Fig. 8 is missing any reference to "*type* of failure condition," including,

importantly, how "a type of failure condition" is determined, or how the "reconfiguration

solution" depends on it.  Likewise, the specification passages cited by WSOU related to Fig. 8 do

not disclose any "*type* of failure condition."  (*See* WSOU Resp. at 9–10).  Therefore, Fig. 8

cannot save WSOU.  *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318-19 (Fed. Cir.

2012) ("[W]here a disclosed algorithm supports some, but not all, of the functions associated

with a means-plus-function limitation, we treat the specification as if no algorithm has been

disclosed at all …. We cannot allow disclosure as to one function to fill the gaps in a

specification as to a different, albeit related, function.").

As pointed out in Defendant's Opening brief, the claims and specification are devoid of

disclosing what a "type" of failure condition is.  (*See* Defendant Op. at 18).  Instead, the

specification just repeats the phrase "failure condition type," without additional explanation:

> In one such embodiment, the reconfiguration solution may be determined
> according to a *failure condition type*.  For example, a *first failure condition type*
> may result in a determination that a power level increase solution should be
> applied in response to the first failure condition while a *second failure condition
> type* may result in a determination that a monitoring solution should be applied in
> response to the second failure condition.

('790 patent at 10:1–8 (emphasis added)).  WSOU focuses on "reconfiguration solution type"

(WSOU Resp. at 9–10), but this is plainly not the same as the claimed "type of the failure

condition." Accordingly, Fig. 8 and the related text is an incomplete algorithm at best—providing no structure relating to "type of failure condition."

      **2.     If the Court finds that the specification discloses an algorithm, then the structure should be limited to Fig. 8**

WSOU points to Fig. 8 and the accompanying disclosure to support its argument that "[a] POSITA would understand the structure is a memory and processor, programmed to carry out the following algorithm (WSOU Resp. at 10):

> 1.     Determine the configuration solution type to be implemented: power increase or monitoring. PX 790 at 9:49-62; Fig. 8 at 808.
> 2.     If power increase, then determine a power level increase associated with each of the at least one base station element to be reconfigured. *Id.* at 10:13-15; Fig. 8 at 810.
> 3.     If monitoring, then
>      a. monitor for each wireless terminal previously served by the base station element with the failure condition for determining whether to establish a connection with the wireless terminals; *Id.* at Fig. 8 at 812.
>      b. determine a direction of travel associated with each wireless terminal previously served by the base station element with the failure condition. *Id.* at Fig. 8 at 814.
> 4.     Then implement the reconfiguration solution. *Id.* at Fig. 8 at 816."

## III.    U.S. PATENT NO. 9,548,977 (CASE NO. 6:20-CV-01021) CLAIM TERMS

    **A.    "a vendor specific attribute according to the standard of Wi-Fi Alliance" (claims 1, 5, 10, 11, 13, and 15)**

| WSOU | Defendant |
|------|-----------|
| No construction necessary | Indefinite |

WSOU marches through a complex and confusing presentation of extrinsic evidence—all through attorney argument—about "who" the Wi-Fi Alliance purportedly is (WSOU Resp. at 12), "the standard of the Wi-Fi Alliance" (WSOU Resp. at 13), and the meaning of "a vendor specific attribute according to the standard of the Wi-Fi Alliance" (WSOU Resp. at 13-14). But that extrinsic evidence fails to save the claim. To the contrary, the clam itself, the other intrinsic evidence, and WSOU's attorney argument demonstrates that the claim is indefinite.

WSOU first sets up a strawman—that the phrase "a vendor specific attribute" has antecedent basis (WSOU Resp. at 11).  But that is not in dispute.  It is the phrase, "according to *the* standard of the Wi-Fi Alliance" that lacks antecedent and is indefinite.

WSOU then concedes that the claim lacks antecedent basis for "the standard of Wi-Fi Alliance."  (*Id.*).  But here, WSOU shifts gears to argue that a "POSITA would *inherently* understand 'the standard' or 'a vendor specific attribute according to the standard of the Wi-Fi Alliance' to mean a vendor specific attribute according to *the standard of the Wi-Fi Alliance*." (WSOU Resp. at 12) (emphasis added).  This is circular reasoning—WSOU's argument is that a POSITA would inherently understand that "the standard of the Wi-Fi Alliance" is "the standard of the Wi-Fi Alliance," without identifying exactly what the standard is.

WSOU's inherency analogy to a sphere and its outer surface, citing to MPEP Section 2173.05(e), is misplaced.[2]  (WSOU Resp. at 12).  While a sphere inherently has a single outer surface, the Wi-Fi Alliance does not inherently have a single "standard" for vendor specific attributes.  A simple look at WSOU's extrinsic evidence demonstrates this.  WSOU alleges the Wi-Fi Easy Connect as the standard, but WSOU's extrinsic evidence demonstrates that there are numerous W-Fi Alliance "standards" (unlike a sphere that has only one outer surface).[3]

WSOU then tries to explain what "the standard of the Wi-Fi Alliance" *is*:

> ***The standard of the Wi-Fi Alliance.*** While IEEE 802.11x is a "standard" that has standard attributes, the standard of the Wi-Fi Alliance has attributes to extend the functionality of the IEEE 802.11x standard. A POSITA would understand the function of the Wi-Fi Alliance (e.g., certification of interoperability), and that the

---

[2]    MPEP 2173.05(e) ("Lack of Antecedent Basis") confirms the '977 claim at dispute is indefinite: "A claim is indefinite when it contains words or phrases **whose meaning is unclear**. The lack of clarity could arise where a claim refers to … 'the lever,' where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference." Also, WSOU's reliance on the *Bose* case is misplaced and supports indefiniteness.  The Examiner there required that the applicant amend the claim because it lacked antecedent basis, to overcome § 112(2) indefiniteness.

[3]    *See* https://www.wi-fi.org/who-we-are (*see* WSOU Resp. at 12).  In addition to "Wi-Fi Easy Connect" that WSOU cites in its Response Brief (*see* p. 13), the Wi-Fi Alliance URL relied on by WSOU refers to, for example: Wi-Fi Optimized Connectivit; Wi-Fi Protected Setup; Wi-Fi QoS Management; Wi-Fi Agile Multiband; Wi-Fi Vantage; Wi-Fi Aware; Wi-Fi Data Elements; WiGig; Wi-Fi Direct; WMM; WPA; Wi-Fi EasyMesh; WPA2; Wi-Fi Enhanced Open; WPA3; Wi-Fi HaLow; Miracast; and Passpoint.

> Wi-Fi Alliance publishes vendor-specific attributes that can be used to extend functionality of IEEE 802.11x standard, including the the Wi-Fi Easy Connect Specification. *See, e.g.*, Ex. 5 (Wi-Fi Alliance, Wi-Fi Easy Connect Specification Version 2 (2020)).  **A POSITA would understand this to be the standard of the Wi-Fi Alliance**.

(WSOU Resp. at 13).  Not a hint of WSOU's definition can be found in the intrinsic evidence.

WSOU relies here on a purported publication from year **2020**, *eleven years after* the filing date of the '977 patent.  (*See* Ex. 5 (Wi-Fi Alliance, Wi-Fi Easy Connect Specification Version 2 (2020)).  This publication also apparently has multiple versions, with the one WSOU relying on being labelled "Version 2."  Thus, not only does WSOU rely on attorney argument, it also relies on non-contemporaneous extrinsic evidence that has changed over time.  Extrinsic references that are not contemporaneous with the patent are improper because they "do not reflect the meanings that would have been attributed to the words in dispute by persons of ordinary skill in the art as of the grant of the . . . patent."[4]

On page 13 of its Response, WSOU tries to explain the meaning of "a vendor specific attribute according to the standard of the Wi-Fi Alliance:"

> Thus, a POSITA would understand that 'a vendor specific attribute according to the standard of the Wi-Fi Alliance' is *a non-standard attribute* that is permitted, *but not defined by the standard*, and are established by the Wi-Fi Alliance.  It is an extension of the standard attributes.  That is, *the standard is open-ended* such that it will allow the vendor-specific attribute to be used (as opposed to the public use) and defined by the vendor.

(WSOU Resp. at 13 (emphasis added)).  WSOU's attempt at an explanation only undercuts any notion that there is one "the standard of the Wi-Fi Alliance" that would be reasonably ascertainable by a POSITA.  WSOU first refers to "**a non-standard attribute**" and then admits "the standard [of the Wi-Fi Alliance]" is "**open-ended**," demonstrating that the claim has open-ended (i.e., undefined) boundaries.  WSOU also states confusingly that the attribute "is

---

[4]   *See, e.g., Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003).

permitted, **but not defined by the standard**, and are established by the Wi-Fi Alliance," which creates even more ambiguity as to the scope of a claimed "vendor specific attribute." (*Id.* (emphasis added)). Plaintiff then describes how its purported standard of the Wi-Fi Alliance is "not fixed and can change over time:"

> The vendor specific extensions according to the standard of the Wi-Fi Alliance are *not fixed and can change over time*. The standard allows what is essentially an unreserved number, code or identity that still complies with and is within the capability of the standard. For example, in 2020, vendor specific attributes included those established in the Wi-Fi Easy Connect Specification Version 2.0.

(WSOU Resp. at 13 (emphasis added)). WSOU again cites to non-contemporaneous extrinsic evidence (2020), many years after the invention date. The claim is unclear and indefinite.

WSOU then analogizes the use of "***the*** standard of the Wi-Fi Alliance" in the '977 claims to "***the*** OGP of the Western District of Texas, Waco Division:"

> This is like saying "according to [the] OGP of the Western District of Texas, Waco Division. Practitioners in this Court would know what is being referred to—the OGP means the Order Governing Proceedings for Judge Albright's Court. Nothing more is necessary to identify the Order Governing Proceedings to an attorney with knowledge of the operations of the Court.

Even assuming for purpose of argument that there is one identifiable "standard" of the Wi-Fi Alliance (which WSOU has not established) like the identified OGP of the Western District of Texas, Waco Division, WSOU's argument makes little sense. If a claim were to read "according to ***the*** OGP of the Western District of Texas, Waco Division," without any antecedent basis for "***the*** OGP of the Western District of Texas, Waco Division," that claim too would be unclear and indefinite. The OGP has numerous versions, *e.g.*, Version 3.4 (issued on June 24, 2021); and Version 3.1 (issued on September 22, 2020). And WSOU fails to address other differences between the OGP and "the standard of the Wi-Fi Alliance" that make its analogy inappropriate, including, as Plaintiff itself admits, the "open-ended" nature of its purported standard of the Wi-Fi Alliance, and that purported standard's use of "non-standard attributes."

Lastly, WSOU argues that because the Examiner allowed the claims, there is no antecedent-basis problem with the claims.  Not surprisingly, WSOU provides no legal support for this proposition.  If WSOU were correct, that would mean no court could invalidate an patent based on an antecedent-basis problem.[5]

**B.      "one processor; and at least one memory including computer program code, the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus to perform at least the following:" (claims 5, 11, and 13)**

| WSOU | Defendant |
|------|-----------|
| No construction necessary | 35 U.S.C. § 112, ¶ 6 applies<br>Functions:<br>providing… for transmission of a request for signed access point information<br><br>receiving … a response for verification; and<br><br>verifying … the signed access point information.<br>Structure: Insufficient structure (no algorithm); indefinite |

Defendant's Opening brief establishes the reasons why this term is subject to Section 112(6).  Rather than addressing those reasons or disputing that there is insufficient structure (including lack of any algorithm), WSOU invokes and relies on the notion that the claims at issue are so-called *Beauregard* claims, allegedly immune from means-plus-function treatment.  WSOU is wrong—*Beauregard* claiming does not automatically allow claims to escape means-plus-function treatment.  This Court's and other courts' decisions finding terms written in the same form as the term at issue to be subject to means-plus-function.

The term at issue is subject to means-plus-function treatment because its formulaic reference to "processor," "at least one memory," and "computer program code" does not provide sufficient structure.  WSOU does not dispute that processor, memory, and code are simply "black-box placeholders," lacking specific structure for the claimed functions.

---

[5]    *See. e.g., Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370–71 (Fed. Cir. 2006).

That the claims may be *Beauregard* claims does not change that. *Beauregard* claiming merely refers to a claim drafting technique to "circumvent eligibility restrictions" (*i.e.*, Section 101 eligibility). *See Classen Immunotherapies, Inc. v. Biogen IDEC*, 659 F.3d 1057, 1074 (Fed. Cir. 2011). It does not create any structure for claim elements that lack structure.

WSOU warns against "exalting form over substance." But form matters for the means-plus-function analysis. "Means-plus-function claiming involves a quid pro quo." *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012). That is, "[i]n exchange for being able to draft a claim limitation in purely functional language, [t]he applicant must describe in the patent specification some structure which performs the specified function.'" *Id.* The law "does not permit patentees to freely engage in functional claiming while circumventing [means-plus-function treatment] simply by avoiding the word 'means.'" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372-73 (Fed. Cir. 2020). As this Court has explained, applicants cannot "simply recite nonce words—'processor' and 'code'—in order to essentially write the claim in a means-plus-function format without being subject to § 112, ¶ 6." *Dyfan, LLC v. Target Corp.*, No. 6:19-cv-00179-ADA, 2020 WL 8617821, at *6 & n.4 (W.D. Tex. Nov. 25, 2020).

WSOU also argues that the term is not subject to means-plus-function treatment because "this term is in the preamble." (WSOU Resp. at 16). WSOU is wrong—the term is recited in the body of the claim, not the preamble. The preamble for claims 5, 11, and 13 is: "An apparatus comprising: . . . " Even if the term were somehow construed to be part of the preamble, the preamble is limiting. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). As WSOU itself describes, the term "sets up the entirety of the objective environment of the claim." (WSOU Resp. at 15).

In *WSOU Investments LLC v. Google LLC*, No. 6:20-cv-00573-ADA, Dkt. 44 (W.D. Tex. June 2, 2021) (Albright, J.), this Court found a substantially similar term ("at least one memory and the computer program code are configured, with the at least one processor, to cause the

apparatus to at least detect that an application is being started on the apparatus . . . ") subject to means-plus-function treatment and ultimately indefinite for lack of sufficient structure. Other courts have also found similar *Beauregard* claims to be subject to means-plus-function treatment. *See Arendi S.A.R.L. v. LG Elecs., Inc.*, No. 12-cv-1595-LPS, 2019 WL 3891150, at *12 (D. Del. Aug. 19, 2019) ("computer readable medium including program instructions for performing the steps of . . . ," located in preamble, subject to means-plus-function); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 638 (E.D. Tex. 2019) ("A computer program product embodied on a non-transitory computer readable medium, comprising:..", located in preamble, subject to means-plus-function).

**C.    "A non-transitory computer-readable storage medium including computer-readable program code, which when executed by at least one processor provides operations comprising:" (claim 10)**

| WSOU | Defendant |
|---|---|
| No construction necessary | 35 U.S.C. § 112, ¶ 6 applies<br>Functions:<br>providing… for transmission of a request for signed access point information<br><br>receiving … a response for verification; and<br><br>verifying … the signed access point information.<br>Structure: Insufficient structure (no algorithm); indefinite |

Like the processor/code/memory term in the previous section, WSOU's invocation of *Beauregard* does not save this term from Section 112(6). WSOU does not dispute that the term lacks sufficient structure, including any algorithm. As with other terms written in substantially the same form that this Court and others have analyzed, this term is subject to means-plus-function treatment.[6]

---

[6]    *WSOU Investments LLC v. Google LLC*, No. 6:20-cv-00573-ADA, Dkt. 44 (W.D. Tex. June 2, 2021) (Albright, J.); *Arendi S.A.R.L.*, 2019 WL 3891150 at *12; *Cypress Lake Software, Inc.*, 382 F. Supp. 3d at 638.

Dated:  October 4, 2021                    Respectfully submitted,

                                           FISH & RICHARDSON P.C.

                                   By:  */s/ John T. Johnson*
                                           David M. Hoffman
                                           Texas Bar No. 24046084
                                           hoffman@fr.com
                                           111 Congress Avenue, Suite 810
                                           Austin, TX 78701
                                           Tel: (512) 472-5070
                                           Fax: (512) 320-8935

                                           John T. Johnson (*admitted pro hac vice*)
                                           jjohnson@fr.com
                                           Jeffrey C. Mok (*admitted pro hac vice*)
                                           jmok@fr.com
                                           7 Times Square, 20th Floor
                                           New York, NY 10036
                                           Tel: (212) 765-5070
                                           Fax: (212) 258-2291

                                           *Attorneys for Defendant,*
                                           ***TP-LINK TECHNOLOGIES CO., LTD.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on October 4, 2021, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

*/s/ John T. Johnson*
John T. Johnson

TP-LINK CHINA'S REPLY CLAIM CONSTRUCTION BRIEF - Page 17